UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| LOMBARD FLATS LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FAY SERVICING LLC, et al.,<br><br>Defendants. | Case No. 22-cv-05686-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 58 |

# INTRODUCTION

This is a debt-collection dispute concerning the mortgage loan on the property located at 949 Lombard Street in San Francisco. Plaintiffs Martin Eng and Lombard Flats LLC sued defendants Fay Servicing LLC (the current loan servicer), U.S. Bank Trust National Association (the holder of the mortgage note and deed of trust), and VRMTG Asset Trust, asserting three claims in connection with the debt-collection practices of Fay and J.P. Morgan Chase (a previous loan servicer that used to be a defendant in this case).[1] The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), mainly on the grounds that the loan is not a "consumer debt" under the state and federal debt-collection statutes and the plaintiffs lack standing under

---

[1] Second Am. Compl. (SAC) – ECF No. 57. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 22-cv-05686-LB

California's Unfair Competition Law (UCL).[2] The court grants the motion in part: the debt-collection claims survive but the UCL claim does not (and thus U.S. Bank Trust and VRMTG are dismissed with prejudice).

### STATEMENT

**1. Factual Background**

Lombard Flats "is the borrower of the mortgage on 949 Lombard Street."[3] Mr. Eng "was at all times relevant to this action a borrower of the note under the mortgage." He is a manager and member of Lombard Flats and he lives at the property at issue.[4] In 2005, Lombard Flats refinanced the property with Washington Mutual for $3.2 million. Washington Mutual was taken over by Chase in 2009, and Chase serviced the loan from then until August 2022, when it transferred servicing to Fay.[5] In November 2022, Chase assigned the note and deed of trust to defendant U.S. Bank Trust.[6] There is also a third defendant, VRMTG Asset Trust. U.S. Bank Trust is the owner trustee of VRMTG and "holds the note on behalf of [VRMTG]."[7]

The defendants submitted the documents relevant to the mortgage loan's history.[8] The borrower on the 2005 loan from Washington Mutual was Mr. Eng.[9] On a November 2008 refinance-loan application, Mr. Eng indicated that the property would be an "investment" property

---

[2] Mot. – ECF No. 58.

[3] SAC – ECF No. 57 at 2 (¶ 1).

[4] *Id.* at 2 (¶ 2), 5 (¶ 16).

[5] *Id.* at 4 (¶ 13), 8 (¶ 31).

[6] *Id.* at 4 (¶ 14).

[7] *Id.* at 2 (¶ 5), 4 (¶ 14).

[8] On a motion to dismiss, courts may consider "materials incorporated into the complaint" and "matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The Ninth Circuit has also "extended the doctrine of incorporation by reference to consider documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question[,] and there are no disputed issues as to the document's relevance." *Id.*

[9] Deed of Trust, Ex. 1 to Req. for Jud. Notice – ECF No. 58-1 at 5.

rather than a primary or secondary residence.[10] He had owned the property since 1985 and he transferred title to Lombard Flats in January 2009.[11] In an October 2009 bankruptcy petition filed by Lombard Flats, the subject property was listed being held by Lombard Flats in fee simple, and a creditor (presumably Chase) had a secured claim on the property.[12] Chase sold the mortgage loan to U.S. Bank Trust in November 2022, and the assignment lists Mr. Eng as the borrower.[13]

In November 2019, Lombard Flats "suffered a serious financial hardship," and the problem was compounded with the onset of the COVID-19 pandemic in March 2020. Lombard Flats contacted Chase to request "foreclosure prevention assistance."[14] Chase represented that it would grant Lombard Flats a "COVID-19 forbearance plan" under which all monthly payments during the forbearance would be deferred until the end of the loan. Chase promised that the forbearance would last at least eighteen months but refused to send a written explanation of the promised forbearance. Then in August 2021, Chase told Mr. Eng that monthly payments would resume at the loan's standard rate of $12,700.[15] Chase employees also "instructed [the plaintiffs] to submit an application for a [loan] modification as a condition to resume monthly payments." The plaintiffs did so, and Chase then denied the application without explaining why.[16]

In December 2021, Chase began making "dozens" of "harassing and annoying" telephone calls to Mr. Eng to demand monthly payments. Chase employees would make calls "at intentionally inconvenient times, including early in the morning and late at night." That month and in February and April 2022, Lombard Flats made payments of $12,700, but the payments were returned by

---

[10] Loan Appl., Ex. A to Pelletier Decl. – ECF No. 58-2 at 8. The defendants submitted a separate brief arguing that this loan application should be incorporated by reference. Req. for Incorporation – ECF No. 58-2 at 1–5.

[11] Grant Deed, Ex. 2 to Req. for Jud. Notice – ECF No. 58-1 at 32 (dated November 4, 2008 and recorded on January 26, 2009); Plan of Reorganization, Ex. 5 to Req. for Jud. Notice – ECF No. 58-1 at 114.

[12] Bankr. Pet., Ex. 4 to Req. for Jud. Notice – ECF No. 58-1 at 86.

[13] Assignment of Deed of Trust, Ex. 7 to Req. for Jud. Notice – ECF No. 58-1 at 154.

[14] SAC – ECF No. 57 at 5 (¶ 15).

[15] *Id.* at 5–6 (¶¶ 16, 19).

[16] *Id.* at 6 (¶ 23).

Chase. Chase continued to insist on payment and made "threats to report negative credit information to the credit bureaus" and "threats to foreclose on the property."[17] The plaintiffs told Chase "numerous times" that they had made three payments but those payments were returned. The plaintiffs also reminded Chase about its forbearance promise, and Mr. Eng requested that Chase stop calling him. Despite that, Chase employees continued to call.[18]

Also, after Fay became the servicer in August 2022, it sought to collect on what it described as Chase's $3.2 million loan to Lombard Flats, even though Lombard Flats's prior bankruptcy had reduced that loan to $3 million.[19]

## 2. Procedural History

The initial complaint, which was filed in state court and asserted only five claims (and did not assert any claims under debt-collection statutes), named Chase and Fay as defendants.[20] Chase removed the case to this court.[21] Chase then moved to dismiss under Rule 12(b)(6) and the plaintiffs filed a statement of non-opposition and dismissed Chase with prejudice under Rule 41.[22] Thus far, the court has granted two motions to dismiss with leave to amend.[23] Most recently, the court dismissed the First Amended Complaint in part, holding that (1) the debt-collection-statute claims survived because of Fay's saying in a debt-collection letter that the debt was $3.2 million when it actually was $3 million, and (2) the derivative UCL claim thus also survived.[24]

---

[17] *Id.* at 5 (¶¶ 17–18).

[18] *Id.* at 5–6 (¶ 19).

[19] *Id.* at 8 (¶ 34), 10 (¶ 46); Plan of Reorganization, Ex. 5 to Req. for Jud. Notice – ECF No. 58-1 at 117; Bankr. Ct. Order, Ex. 6 to Req. for Jud. Notice – ECF No. 58-1 at 132 (confirming the plan of reorganization).

[20] Compl. – ECF No. 1-1.

[21] Notice of Removal – ECF No. 1.

[22] Chase Mot. – ECF No. 11; Statement of Non-Opp'n – ECF No. 18; Notice of Voluntary Dismissal – ECF No. 20.

[23] Orders – ECF No. 35, 54.

[24] Order – ECF No. 54.

The operative Second Amended Complaint has three claims: (1) violation of the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692e (against Fay); (2) violation of the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.17 (against Fay for violating the federal Act); and (3) violation of the UCL, Cal. Bus. & Prof. Code § 17200 (against all defendants) (labeled in the complaint as claim twelve).[25]

The court has subject-matter jurisdiction. 28 U.S.C. §§ 1331, 1332, 1367(a). All parties consented to magistrate-judge jurisdiction.[26] *Id.* § 636(c). The court held a hearing on October 5, 2023.

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations that, when accepted as true, are sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves. . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the

---

[25] SAC – ECF No. 57 at 7–13 (¶¶ 29–69).

[26] Consents – ECF Nos. 9, 17, 47.

complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

Put another way, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

Fraud allegations elicit a more demanding standard. "In alleging fraud. . . , a party must state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This means that "[a]verments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "The plaintiff must [also] set forth what is false or misleading about a statement, and why it is false." *Id.* (cleaned up). Like the basic "notice pleading" demands of Rule 8, a driving concern behind Rule 9(b) is that defendants be given fair notice of the charges against them. *In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b) demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (cleaned up); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should not give leave to amend. *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1184 (9th Cir. 2016); *see Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th Cir. 2017) (leave to amend may be appropriate if the plaintiff "identifie[s] how she would articulate a cognizable legal theory if given the opportunity").

**ANALYSIS**

The defendants contend that the mortgage loan at issue is not a "consumer debt" (as required under the debt-collection statutes) because (1) the plaintiffs represented in the 2009 bankruptcy proceeding that Lombard Flats rather than Mr. Eng held the debt, so the doctrine of judicial estoppel bars them from taking a different position now, and (2) the loan was for an investment purpose, as shown on Mr. Eng's November 2009 refinance application. As for the UCL claim, the defendants argue that the plaintiffs wrongly group all three defendants together for the claim (even though the other two claims are against Fay only) and the plaintiffs lack standing.[27]

The first issue is whether the loan at issue is a consumer debt within the meaning of the California and federal debt-collection statutes. Courts mostly analyze claims under the Rosenthal Fair Debt Collection Practices Act and the federal Fair Debt Collection Practices Act "identically." *Cutler ex rel. Jay v. Sallie Mae, Inc.*, No. EDCV-13-2142-MWF (DTBx), 2014 WL 7745878, at *2 (C.D. Cal. Sept. 9, 2014).

Under both Acts, the debt at issue must be that of a "consumer." *Gomez v. Wells Fargo Home Mortg.*, No. C 11-01725 LB, 2011 WL 5834949, at *5 (N.D. Cal. Nov. 21, 2011) (federal Act); *Ansari v. Elec. Document Processing Inc.*, No. 5:12-cv-01245-LHK, 2013 WL 4647621, at *11 (N.D. Cal. Aug. 29, 2013) (Rosenthal Act). Only natural persons qualify as consumers. 15 U.S.C. § 1692a(3); Cal. Civ. Code § 1788.2(f).

Also under both Acts, the debt must have been obtained "primarily for personal, family, or household purposes" to qualify as a consumer debt. 15 U.S.C. § 1692a(5); Cal. Civ. Code § 1788.2(e)–(f). Courts "examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended." *Bloom v. I.C. Sys., Inc.*, 972 F.2d 1067, 1068 (9th Cir. 1992) (cleaned up). Thus, "[c]ourts determine the debtor's purpose as of the time the debt was incurred." *Glawe v. Carpenter, Hazlewood, Delgado & Bolen PLC*, 859 F. App'x 102, 104 (9th Cir. 2021) (cleaned up). In this analysis, "neither the lender's motives nor the fashion in which the

---

[27] Mot. – ECF No. 58.

loan [was] memorialized are dispositive." *Slenk v. Transworld Sys., Inc.*, 236 F.3d 1072, 1075 (9th Cir. 2001) (cleaned up); *Bloom*, 972 F.2d at 1068–69.

First, Mr. Eng is the borrower on the mortgage and thus the mortgage is in the name of a natural person. The 2005 deed of trust and the November 2022 assignment from Chase to U.S. Bank Trust each list Mr. Eng as the borrower. It is true that in 2009, Mr. Eng purported to transfer title to the property to Lombard Flats, and the property was treated as Lombard Flats's asset (encumbered by a creditor's secured claim) in its bankruptcy proceedings that year.[28] But in the 2005 deed of trust, Mr. Eng had "irrevocably" granted the subject property to the trustee.[29] Although the parties and the court have described the transaction as a "mortgage," that is not quite right: "a mortgage creates only a lien, with title to the real property remaining in the borrower/mortgagee, whereas a deed of trust passes title to the trustee." *Calvo v. HSBC Bank USA, N.A.*, 199 Cal. App. 4th 118, 122 (2011). In any case, the November 2022 assignment still listed Mr. Eng as the borrower, and the purported transfer of title to Lombard Flats did not automatically change the borrower on the loan.[30]

The defendants contend that due to representations made in the 2009 bankruptcy proceedings, judicial estoppel bars the plaintiffs from now representing that Mr. Eng is the borrower. Judicial estoppel is an equitable doctrine that prevents a party from benefitting by taking one position but then later seeking to benefit by taking a clearly inconsistent position. *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). The plaintiffs are not taking an inconsistent position here because the title holder identified in the bankruptcy proceedings is different than the borrower on the loan. And the fact that Lombard Flats represented in the bankruptcy proceedings that the property was encumbered by a secured claim does not necessarily mean that Lombard was representing that the debt underlying that claim was Lombard's: Lombard listed Mr. Eng as the owner of Lombard[31] and the overall representations are consistent with the debt being Mr. Eng's.

---

[28] *See supra*, Statement.

[29] Deed of Trust, Ex. 1 to Req. for Jud. Notice – ECF No. 58-1 at 6–7.

[30] Assignment of Deed of Trust, Ex. 7 to Req. for Jud. Notice – ECF No. 58-1 at 154.

[31] Bankr. Pet., Ex. 4 to Req. for Jud. Notice – ECF No. 58-1 at 84.

For the plaintiffs' claim under 15 U.S.C. § 1692e of the federal Act, the plaintiffs themselves do not need to be "consumers" so long as the debt at issue is a consumer debt. *Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 649–50 (6th Cir. 1994); *Gilliam v. Porter McGuire Kiakona & Chow, LLP*, No. CV 20-00372 JMS-KJM, 2021 WL 1681076, at *7 (D. Haw. Apr. 28, 2021). Because Mr. Eng is a consumer, it is no issue that Lombard Flats is a plaintiff here.

Second, the court declines to dismiss the debt-collection claims on the ground that the loan was for an investment purpose. Although Mr. Eng checked that box on his November 2009 refinance application, that fact is not alleged in the complaint and instead is offered by the defendants with their motion. The doctrine of incorporation by reference would apply to the refinance application only if "the complaint necessarily relied" on the application. *Coto Settlement*, 593 F.3d at 1038. But the way that transactions are memorialized is not dispositive of a debt's purpose, *Slenk*, 236 F.3d at 1075, and the purpose issue is better left for summary judgment.

The next issue is the plaintiffs' UCL claim. The plaintiffs concede that it is a derivative claim.[32] The UCL claim is against all three defendants, even though the other claims are against Fay only. "The concept of vicarious liability has no application to actions brought under the [UCL]." *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002) (cleaned up). There are no non-derivative claims against U.S. Bank Trust or VRMTG. There are also no allegations against U.S. Bank Trust or VRMTG, and the plaintiffs have already been granted leave to amend twice. The court thus dismisses U.S. Bank Trust and VRMTG with prejudice.

Finally, the defendants contend that the plaintiffs lack standing under the UCL because they still own the property and they allege only that Fay misstated the amount due on the loan.[33] UCL claims may be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. "More specifically, under section 17204, a plaintiff must show either prior possession or a vested legal

---

[32] Opp'n – ECF No. 60 at 9.

[33] Mot. – ECF No. 58 at 10–11.

ORDER – No. 22-cv-05686-LB            9

interest in the money or property allegedly lost." *Swain v. CACH, LLC*, 699 F. Supp. 2d 1117, 1121 (N.D. Cal. 2009) (cleaned up).

It is difficult to say that an allegedly misleading debt-collection letter, standing alone, caused loss of money or property (even if it may at least entitle the plaintiffs to statutory damages). The result would be different if, for example, the plaintiffs alleged damage to their credit history because of Fay's debt-collection practices. *Yulaeva v. Greenpoint Mortg. Funding, Inc.*, No. CIVS-09-1504 LKK/KJM, 2009 WL 2880393, at *11 (E.D. Cal. Sept. 3, 2009). But the plaintiffs cite no cases showing that a misleading letter gives them UCL standing. Instead, they point to "a real injury of approximately $200,000.00 as Defendant Fay demanded $3.2 million dollars when the total [loan] amount was reduced to $3 million."[34] The plaintiffs did not lose $200,000, though. The court thus dismisses the UCL claim with prejudice.

## CONCLUSION

The court grants the motion to dismiss in part: the case is now narrowed to two debt-collection claims against Fay. Fay's answer is due within fourteen days.

This resolves ECF No. 58.

**IT IS SO ORDERED.**

Dated: October 6, 2023

LAUREL BEELER
United States Magistrate Judge

---

[34] Opp'n – ECF No. 60 at 10.