UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOMBARD FLATS LLC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>FAY SERVICING LLC, et al.,<br><br>Defendants. | Case No. 22-cv-05686-LB (SK)<br><br>**AMENDED ORDER REFERRING ATTORNEY RESHMA KAMATH TO THE STANDING COMMITTEE ON PROFESSIONAL CONDUCT** |

On July 24, 2024, the Court issued an Order Referring Attorney Reshma Kamath to the District Court's Standing Committee on Professional Conduct. (Dkt. No. 129.) This Order amends that order to include two subsequent filings by Kamath.

Civil Local Rule 11-4 provides that "[e]very member of the bar of this Court and any attorney permitted to practice in this Court under Civil L.R. 11 must, among other things, "[m]aintain respect due to courts of justice and judicial officers," "[p]ractice with honesty, care, and decorum required for the fair and efficient administration of justice," and "[d]ischarge all obligations to client(s) and the Court . . ." Pursuant to Local Rule 11-6(a)(1), the Court refers attorney Reshma Kamath to the Court's Standing Committee on Professional Conduct for her failure to maintain the respect due to courts of justice and judicial officers, failure to practice with the care and decorum required for the fair and efficient administration of justice, and failure to discharge all obligations to the Court.

By way of background, on May 8, 2024, the Court held a scheduling conference for a settlement conference where the Court allowed the client representative for Defendant Fay Servicing LLC ("Fay") to appear at the settlement conference virtually. (Dkt. No. 111.) On May 16, 2024, the Court held a subsequent conference and set the settlement conference for July 23, 2024. (Dkt. No. 115.) The Court then issued its standard Notice of Settlement Conference and

Settlement Conference Order, stating that the conference was in person (except for Defendant Fay's client representative). (Dkt. No. 116.)

On July 21, 2024, Plaintiffs filed a "Fourth Request to Appear Remotely Re Settlement Conference Statement," where in Plaintiffs' counsel Reshma Kamath stated: "[t]here is no reasonable excuse why the PMK for defendants must not be mandated to be there [settlement conference] in-person." (Dkt. No. 119.) Kamath continued that she "feels a security threat to be in the CAND courtrooms in-person," following "certain incidents." (*Id*.) Kamath further argued that she did not want to spend "over $170 on Uber" on a conference "that will only be futile." (*Id*.) Kamath argued that, because Fay's client representative was allowed to appear remotely, "all should be allowed." (*Id*.) Kamath then stated that she "does not trust the U.S. courts, its judges, its sheriffs, and the security in front of CAND whatsoever. Whenever the American racists and misogynists can show their true colors doing whatever they want." (*Id*.) Kamath then threatened that, if the Court did not allow her to attend the conference virtually, "it is highly unlikely Plaintiffs' counsel will attend." (*Id*.) The Court found Kamath's request to be without good cause, denied the request, and ordered Kamath to attend the settlement conference in person. (Dkt. No. 120.)

Twenty minutes later, Kamath responded to the Court's order. (Dkt. No. 121.) Kamath stated that she would only appear virtually at the settlement conference on July 23, 2024. (*Id*.) Kamath then stated:

> I have reviewed your denial of my request today – while you continue to promote White litigants and White attorneys – as I have prior informed you in detail via e-mail. I have many bosses with the land name 'Kim' and I know this attitude from you very well. Your racism and abuse is pretty clear and visible to me.

(*Id*.) Again, Kamath made the argument that, because Fay's client representative was allowed to appear virtually, all should be allowed to appear virtually. (*Id*.) Kamath stated that, if the Court wanted her to appear in person, the Court should require that all appear in person. (*Id*.) Kamath ended by reiterating that she would attend the conference only virtually, and if the Court wanted to call the conference off, it should. (*Id*.) Doing so would allow her "more time to work on

2

1  substantive matters." (*Id.*)

2  Later that same day, Kamath filed a letter with an exhibit, wherein Kamath stated that her
3  request to appear virtually was not last minute. (Dkt. No. 123.) She told the Court, "[p]lease
4  adhere to the law when you all pretend to be judges trying to follow the law – but daily violate and
5  act in contravention of laws." (*Id.*) Kamath's exhibit included the final page of her confidential
6  settlement conference statement, which included a request for either an entirely in person or
7  entirely virtual settlement conference. (*Id.*)

8  The Court did not respond to these filings and held the settlement conference the following
9  day, July 23, 2024. Kamath did not appear in person, violating this Court's July 22, 2024 Order.
10 However, Plaintiff was present in person. The Court checked its non-public Zoom conference
11 room, located Kamath, and placed her on the Court's iPad so that she could participate in the
12 settlement conference. The settlement conference began at 9:30 a.m., as scheduled.

13 Meanwhile, at 10:42 a.m., Kamath filed a "further letter" on the docket. (Dkt. No. 127.)
14 Kamath stated that she logged into the Court's non-public Zoom conference room at 8:30 a.m. but
15 that there was no one to check in with her even at 9:30 a.m. (*Id.*) Kamath then stated that
16 "Defendant Fay that has multi-million dollar industry has reneged from spending $500 to take a
17 flight from the East Coast to California," meanwhile Kamath "would be forced to expend over
18 $200 in just taking an uber to the courthouse exclusive of all other costs." (*Id.*) Kamath
19 continued, arguing that the Court should have ordered Defendant Fay's representative to appear in
20 person, and "[s]ince you did not, I have logged in via the virtual link." (*Id.*)

21 Kamath then described an "issue" that "was very reminiscent of some 1950s courtroom
22 drama," but that she had "pre-empted it." (*Id.*) Essentially, Kamath described an email from the
23 Court's courtroom deputy that inquired as to whether Kamath had physically lodged her
24 settlement materials. (*Id.*) Because Kamath knew "something like this would occur," she "pre-
25 empted this" by taking "plenty of pictures of the actual drop-off and lodging." (*Id.*) Kamath
26 responded to the courtroom deputy that she had "pictoral [sic] proof." (*Id.*) Kamath then stated
27 that if she had not taken those pictures, "Judge Sallie Kim's chambers would have falsely ruled
28 that they did not receive the papers. . . . This is nothing less than the abuse that many people-of-

United States District Court
Northern District of California

1  color attorneys underwent in the bygone eras of the California courts.  Imagine if a liberal
2  courthouse is like this how the South and related courts are in the United States." (*Id.*)
3        The letter continued, and the Court finds it is appropriate to quote Kamath's final four
4  paragraphs:

> Finally, I, having spent over six years in South Korea, know the culture of Korean-Americans and Koreans very well.  Rarely ever in a higher institutions of education, such as Seoul National University (where I graduated with high honors and the best Thesis award) did I feel any bias or prejudice.  Yet, in California courts, the racism is so stark and add to it the misogyny that I see everyday [sic].  Judges want you to file motions and do work – just to harass you and then deny it.  Outside of academia, the regular Korean culture does give in to White culture more.  Judge Kim may have gotten favors to get to her position of power and authority.
>
> This morning, Defendant Fay's Mr. Rose appeared remotely.  This seems okay for Judge Sallie Kim.  However, Plaintiffs' counsel, Reshma Kamath appearing remotely is a "violation of the court order" for Judge Kim.
>
> Today, also after logging in from 08:30 A.M. PT, the judge initially ended the meeting.  After this, I logged in again and this time I was let in where "Mr. Rose" from "Defendant Fay" was waiting remotely, too.  No repercussions for him from Judge Kim.  <u>Interestingly, I had requested the settlement conference for my clients, i.e., Plaintiffs</u>, and Judge Kim has to demonstrate the unchecked power-trip as many judges do.
>
> The courts are trying to find bias and prejudice – they have pages of ethical guidelines – but all these small micro-aggressions are all racism.  This starts right in law school and continues.  This could be a reality of the America we live in now: taking good law-abiding people and making them criminals – American courts are well-known for doing this to millions of non-Whites.  As I had informed my client, I am not paying any racist sanctions.  As America is, they have to see a Male or White person next to a female-of-color attorney to be taken seriously.  Lot of RACISM in this country.

(*Id.*) (emphasis in original).

    Following the Court's July 24, 2024 Order Referring Attorney Kamath to the Standing Committee on Professional Conduct, Kamath filed two more letters.  Kamath's first letter begins by stating that she had, from what the Court gathers, preemptively filed a response to any forthcoming order to show cause.  (Dkt. No. 131.)  Kamath reiterated that she should not pay "any racist sanctions." (*Id.*)  Kamath then stated she had further comments in light of the Court's order of Referral to the Standing Committee on Professional Conduct.  Kamath criticized the Court and

4

1  stated: "This kind of Korean Ajumma [sic] behavior of manipulativeness is etched in your
2  culture." (*Id.*)
3        Next, Kamath included a more general statement about the entire District Court as well as
4  the California courts:

> I also want to inform the CAND and California courts that constantly hiring light-skinned judges from every culture shows your debilitating downward spiral tinto [sic] an abysmal nothingness. There is not even one person in the entire CAND courts who had lived the life of a non-light-skinned individual. The courts may say they have an African-American magistrate judge – but in her culture, she is light-skinned, too.
>
> Such delusional judges may think why does this matter – we rule on the merits. But no, it matters. Light-skinned people think alike – they're known to look down upon people who're not – in most cultures this is true. You associate racist norms with people who're not light-skinned. Unless, there is a highly misogynistic culture, like our trashy Indian modern Indian culture, then all colors can inflict misogyny openly.

(*Id.*)

      The letter continued as follows:

> You CAND are promoting colorism, misogyny, racism, and a slew of utter non-secial [sic] isms – while you fail to address such behaviors – on a daily basis. Watch the courts get into a strange rut of nothingness.
>
> Remember, people who hire people they like are only promoting the same racist, colorist, and misogynistic behavior of the courtrooms from the 1950s, 60s, 70s, 80s, 90s, into the year 2024.
>
> Courts are supposed to be a step ahead of society. Courts are supposed to set the scene for generations of the future. Courts are supposed to educate the uneducated, poor of the society into how civilized society must be. Courts are supposed to help women.
>
> But the courts in America do the opposite- you do NOTHING.
>
> All the judges have written referring RESHMA KAMATH to committee of PROFESSIONAL CONDUCT. Yes, RESHMA KAMATH's CONDUCT is PROFESSIONAL.
>
> Why don't judges learn to be professional?

(*Id.*)

      In another letter filed later that evening, Kamath again complained about the settlement conference. (Dkt. No. 131.) Kamath stated in general:

5

> You cannot just give White people concessions – you have to offer the same to non-White people. As a woman of color, you have a responsibility. You also cannot make White attorneys win cases of people of color – and not extend that same right to women of color attorneys – without a White attorney alongside.
>
> All this is the CAND judicial officers' unprofessionalism and not serving the people of California while leaching the State of California of vital resources.

(*Id.*)

The Court finds that any accusation of bias and prejudice and the statement that the undersigned "may have gotten favors to get to her position of power" to be unprofessional. Kamath's filings are nothing short of a diatribe following a denial of a request to appear virtually at a settlement conference and unhappiness with the settlement conference. It is acceptable to disagree with the Court and to appeal decisions by the Court, but filing baseless, angry accusations against the Court is not acceptable.

The Court finds that Kamath has not maintained the respect due to courts of justice and judicial officers. Her continued conduct does not show the care and decorum required for the fair and efficient administration of justice, and her conduct certainly does not show that she intends to discharge her obligations to the Court.

Accordingly, the Court REFERS Kamath to the Court's Standing Committee on Professional Conduct.

**IT IS SO ORDERED**.

Dated: July 25, 2024

SALLIE KIM
United States Magistrate Judge